LOOMIS *ET AL.* v. VERENES *ET AL.*

(139 S. E., 393)

1. BANKS AND BANKING—STOCKHOLDER TRANSFERRING STOCK BEFORE DECLARED INSOLVENCY IS NOT LIABLE TO DEPOSITORS, UNLESS BANK WAS INSOLVENT TO HIS KNOWLEDGE, AND TRANSFER WAS TO EVADE LIABILITY (CIV. CODE 1922, § 3998).—A bank stockholder, who, prior to declaration of insolvency thereof, has transferred his stock, is not liable to depositors, under Civ. Code 1922, § 3998, unless transfer of stock was made while bank was insolvent, and when transferor had notice of such insolvency, and transfer was made with intention of evading liability as stockholder.

2. APPEAL AND ERROR—APPELLANTS HAVE BURDEN OF SHOWING ERROR IN CONCURRENT FINDINGS OF FACT IN EQUITY CAUSE.—Where cause is in equity, appellants have burden of showing that there was error in concurrent findings of fact by Special Referee and Circuit Judge.

3. BANKS AND BANKING—EVIDENCE AS MATTER OF LAW HELD NOT TO SHOW THAT BANK WAS INSOLVENT WHEN STOCK TRANSFERRED, OR THAT TRANSFEREES HAD KNOWLEDGE AND INTENDED TO EVADE LIABILITY (CIV. CODE 1922, § 3998).—In action to collect liability, under Civ. Code 1922, § 3998, against stockholders who had transferred stock before declared insolvency, evidence as matter of law *held* to have failed to establish insolvency or defendants' knowledge thereof, or that purpose was to evade statutory liability necessary in order to create liability thereon.

Before RICE, J., Aiken, September, 1925. Reversed.

Action by Mrs. E. A. Loomis, suing on behalf of herself and all other depositors of the Citizens' Bank of Aiken, against James Verenes and another. Judgment for plaintiff, and defendants appeal.

*Messrs. Williams, Croft & Busbee and Henderson & Salley,* for appellants, cite: *"Insolvency":* 13 Wall., 47; 20 L. Ed., 482; 188 U. S., 42; 17 Fed., 660; 16 Wall., 277; 21 L. Ed., 280; 81 S. C., 250. *A transfer actually made is prima facie valid, and burden of invalidating it is upon*

NOTE: On the general rule as to liability of stockholder who transfers stock when bank is in failing condition, see 3 R. C. L., 407.

*those who assert its invalidity:* 10 Cyc., 693–709; 3 R. C. L., 399–408; 77 A. S. R., 565; 81 Fed., 423; 79 .S. C., 6; 50 L. Ed., 1128. . *Stockholders' liability to depositors:* Art. 9, Sec. 18, Const.; Sec. 4320, Code; 55 S. C., 87; 53 S. C., 593; 79 S. C., 1; 4 Fed. (2nd), 404; 10 Cyc., 700.

*Messrs. Brown & Bush* and *Thomas M. Boulware,* for respondent, cite: *Stockholders' liability to depositors:* Sec. 3998, Code; Art. 10, Sec. 18, Const. *"Insolvency":* 33 S. C., 451; 47 L. Ed., 379. *Cases distinguished:* 32 S. E., 758.

September 14, 1927.

The opinion of the Court was delivered by Mr. Justice Blease.

The plaintiff, Mrs. Loomis, brought this action for herself and other depositors of the Citizens' Bank of Aiken against the stockholders of that bank, under the provisions of Section 3998, Vol. 3, Code of 1922, to collect the statutory liability of stockholders to depositors.

In so far as the appeal here is concerned, it is only necessary to state that the complaint alleged the following matters: That upon the request of a majority of the directors of the bank the State Bank Examiner took control thereof on May 4, 1923; on May 22, 1923, an order was obtained from his Honor, Circuit Judge Rice, authorizing the bank to liquidate its affairs under the supervision of the examiner, subject to the order of the Court; that while the bank was insolvent, on November 1, 1921, the defendant, James Verenes, the owner of thirteen shares of the capital stock of the par value of $100.00 per share, represented by two certificates, one for three shares, and the other for ten shares, transferred to Mrs. X. Verenes the said shares of stock; that on the same date, and while the bank was insolvent, the defendants, James Verenes and Gus Verenes, as partners under the firm name of Verenes Bros., who were the owners of ten shares of the capital stock of the bank, represented by two certificates for five shares each, transferred

the said shares of stock to Mrs. X. Verenes; and that the defendants, as well as Mrs. X. Verenes, are liable, jointly and severally, as holders of the shares of stock formerly standing in the names of the defendants, and later appearing on the books in the name of Mrs. X. Verenes, for the amount of the statutory liability thereon.

After demurring to the complaint, the defendants answered with various defenses, but we think it only requisite for a proper consideration of the appeal, to say that the defendants denied their liability, on the ground that they were not stockholders of the bank. We do not think it necessary either to refer further to the demurrer interposed.

The cause was referred to E. L. Allen, Esq., as Special Referee, who recommended judgment against the defendants for the respective amounts of the par value of the stock formerly standing in their names. This recommendation of the Special Referee was affirmed by Judge Rice, presiding in the Court of Common Pleas for Aiken County. The appeal here questions the correctness of the decree of the Circuit Judge and the report of the Referee.

So far as the Referee's report bears upon matters in this appeal, he found as follows:

"The only testimony upon the issue of the insolvency of the bank, prior to the time that the State Bank Examiner took charge of the same, which was in May, 1923, is the testimony of the former president of the bank, Mr. Ariail. This testimony is to the effect that, in his opinion, the bank was in better condition in 1923 than it had been in 1920 and 1921, which were notoriously bad years. It is contended that, inasmuch as the bank was proven to be insolvent when it was taken over by the State Bank Examiner, this testimony shows a general state of insolvency from 1920 to 1923. I do not consider that this very casual testimony, which is the only testimony introduced by the plaintiff, is sufficient to show in such manner as it might have been proven the general insolvency during the period

in question. Certainly there is no proof of notorious insolvency during the period in question, and there is absolutely no proof of knowledge of an insolvent condition on the part of the stockholders and directors at any time prior to a very few days before the State Bank Examiner took over the affairs of the bank.   *   *   *

"As to the 23 shares of stock of the par value of $2,300 being old certificates Nos. 88, 96, 19, and 99, new certificate 102, and transferred by James Verenes and Gus Verenes, trading as Verenes Bros., and James Verenes individually, I find that said stock was signed in blank by James Verenes and that said new certificate was issued to Mrs. X. Verenes, the wife of said James Verenes, and apparently without any consideration whatever. The testimony shows that said James Verenes acted as a director of the bank after the alleged transfers, and up and until the date of closing, and I do not think that said transfers are *bona fide,* and recommend that they be held null and void, and that judgment be granted against James Verenes and Gus Verenes, trading as Verenes Bros., for the sum of $1,000.00, and James Verenes individually for the sum of $1,300.00."

We have no case in our reports, so far as we are advised, that specifically lays down legal principles to guide us in passing upon the issues involved here. The only statute affecting the questions before us is Section 3998 of Volume 3 of the Code. After investigation of the general principles touching the matters in issue, as found in American and English Encyclopedia of Law, Cyc., *Corpus Juris,* and Ruling Case Law, we think the correct principle to be applied is this: A stockholder in a bank, who, prior to the declared insolvency thereof, has transferred his stock therein, is not liable to the depositors on the statutory liability, unless the transfer of the stock was made while the bank was insolvent, and when the transferor had notice of such insolvency, and when the transfer was

made with the intention of evading liability as a stock-holder.

The complaint in this action lacks, in our opinion, material allegations, but in the disposition of the case we will treat that pleading as if it had alleged that, at the time of the transfer of the shares to Mrs. Verenes, the bank was insolvent; that the transferring stockholders had knowledge of the insolvent condition; and that the transfers were not made in good faith, but were made with the purpose of seeking to avoid the statutory liability of the transferors to the depositors.

Since this cause is in equity, and the respondents have in their favor concurrent findings of fact by the Special Referee and the Circuit Judge, the burden is clearly upon the appellants to show that there was error as to the findings of fact. It is necessary to review, which we shall undertake to do as briefly as possible, the evidence taken before the Special Referee.

James. Verenes, his brother and business partner, Gus Verenes, and Mrs. X. Verenes, the wife of James, are Greeks. James owned thirteen shares in the bank and Verenes Bros. owned ten shares. All these shares were transferred on the books of the bank on November 1, 1921, to Mrs. X. Verenes. The first act declaring publicly the insolvency of the bank occurred on May 4, 1923, when the directors requested the State Bank Examiner to take charge. The liquidation order was procured from his Honor, Circuit Judge Rice, on May 22, 1923. The only other evidence as to the insolvency of the bank came from Mr. D. M. Ariail, who was president from the time of the organization of the bank in 1918 until April, 1923. We do not find in the report of Mr. Ariail's testimony any positive statement showing that the bank was ever insolvent. He testified as to bad financial conditions in 1920 and 1921, and that there was some improvement in the condition of the bank in 1922 and 1923. He said that, if there had been a "show-down" in the latter part of 1920, the bank would not have been in

any better condition than in the "show-down" of 1923, so far as "paying money" was concerned. He further testified that at the time he left the bank in April, 1923, there was "enough paper owing to the bank to practically cover the deposits and debts," but they just could not realize on the papers. When he left, there was no alarm about the bank. We agree with what we think was the meaning of the Special Referee in his report, that the evidence did not clearly show that the bank was insolvent in November, 1921, when the stocks of the defendants were transferred.

Even if it be conceded, however, that the bank was insolvent at the time of the transfers of the shares, we do not find any proof that either the transferors or the transferee had notice or information of the insolvent condition. The plaintiffs offered no testimony whatever to show notice or information to this effect. James Verenes, the only witness for the defendants, testified positively that he thought the bank was in good shape, and after the transfers to Mrs. Verenes, upon his advice, in December, 1922, Mrs. Verenes purchased other shares of stock in the bank. This statement, in so far as three shares purchased by her, is corroborated by other evidence in the case. After the transfers, for several months, James Verenes had an average balance in the bank of $600.00, Verenes Bros. had an average balance of $2,000.00, and Mrs. Verenes had on deposit therein around $5,000.00. Certainly, if James Verenes believed the bank was insolvent, these deposits would not have remained in the bank.

The plaintiffs contend that the transfers to Mrs. Verenes were not *bona fide,* were without consideration, and that the defendants are the real owners of the shares. Their reasons for the position taken are, in brief, these: That both James and Gus Verenes were without property in 1921, and that Mrs. Verenes, at that time, had money; that the stocks were transferred from those financially involved to one who was not so embarrassed; and, when the bank was declared insolvent, that Verenes Bros. were well to do and

Mrs. Verenes was too poor to respond to the statutory lia-
bility. These circumstances appear to be correct. The very
fact, however, that Mrs. Verenes, who, in 1921, had about
$5,000.00 in money, had invested the greater part of it in
the shares of stock purchased by her, was sufficient to ex-
plain the great change in her financial condition.

James Verenes testified positively that his wife paid him
and Verenes Bros. for the stock she purchased from them.
It appears that perhaps he was mistaken as to the time pay-
ment was made, he claiming that it was made on November
1, 1921. The exhibits from the records of the bank before
us show that Mrs. Verenes transferred from her bank de-
posit, on July 1, 1922, $5,272.26 to the deposit account of
Verenes Bros. Even if Mrs. Verenes did not pay for the
stocks until July 1, 1922, and not on November 1, 1921, we
do not think this is of sufficient importance in itself to es-
tablish lack of consideration.

The plaintiffs attach great importance to the fact that
James Verenes, who was a director in the bank, continued
to act as such director after the transfers of the stocks to
Mrs. Verenes, and it seems that the Special Referee rested
his conclusions in the case mainly because of that fact.
James Verenes testified, however, that when the stocks
were sold he submitted, in writing, his resignation as a di-
rector, and that thereafter he attended only a few meetings
of the directors, and that these meetings were attended by
him at the request of the president of the bank, because it
was thought he could help advise as to the affairs of the
institution, and it was stated to him by the president that
he could represent his wife at these meetings. There is ab-
solutely no contradiction of this testimony. It must have
been true, or the president, Mr. Ariail, would have disputed
it.

After a careful examination of the testimony, we are
convinced that the plaintiffs failed to establish either
one of three necessary things: (1) The insolvency

of the bank at the time of the transfers of the stocks; (2) that the defendants had knowledge of the insolvent condition; and (3) that the purpose of the defendants was to evade their statutory liability. We think the appellants have met the test required of them—to show that there was error in the findings of fact in the lower Court.

It is the judgment of this Court that, in so far as the appellants here are concerned, the judgment of the lower Court be, and the same is hereby, reversed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, STABLER, and CARTER concur.